## CHARLES DAVIS, petitioner.

A testator devised his mansion-house with land in trust, with provisions that his son A. should be allowed to have the use thereof for life, and after A.'s death that each son of A. in the order of primogeniture should have the right to elect to take the house and a certain portion of the land as his share of the estate; and, in case none of them should so elect to take the same, then that the house and all the land should be divided among A.'s children; and, in case A. died without issue, then the testator made similar provisions with respect to his son B. The testator died, and the trustee, in A.'s lifetime, petitioned this court for an order to sell the house and land, on the ground that such sale was expedient and necessary and for the best interest of the parties interested therein. It appeared that the present income of the estate was less than would be obtained from the proceeds of a sale; but that it was uncertain, in view of the peculiar nature of the provisions, whether the interest of A.'s children would be promoted thereby. *Held*, that no decree of sale should be made.

PETITION to this court, representing that Benjamin Porter, late of Danvers, deceased, by his last will, devised certain estate, both real and personal, in trust for the use and benefit of his son, Benjamin F. Porter, as appeared by a clause of the will, of which a copy was annexed, and appointed the petitioner as trustee; that Benjamin F. Porter has been allowed to occupy said real estate, and is now in possession thereof; that he has children, some of age and others minors; that it is expedient and necessary, and for the best interest of the parties interested, that the real estate should be sold, and the proceeds of the sale thereof invested in

such manner and upon such security as shall be safe and bene-
ficial for all interested therein, and will best effect the objects of
said trust; and praying that the court will order and decree the
sale and conveyance of said real estate, in such manner as shall
seem proper, and an investment of the proceeds by the petitioner
as trustee, upon the uses and trusts named in the will.

The material portions of the first clause of the will were as
follows:

" 1st. I give and devise to my executor hereinafter named,
and any other executor or executors, if any, I may hereafter
nominate and appoint, all that my farm and buildings situate in
said Danvers, where I now dwell, and all my parcels of wood-
land situate in Middleton in said county, [and certain personal
property,] to have and to hold the same to and upon the follow-
ing trusts, that is to say, that he shall allow and permit my son
Benjamin Franklin, during the term of his natural life, to take
and receive to his own use the net income of all said real and
personal estate, and to occupy, possess and enjoy said real and
personal estate during the term of his natural life, or any por-
tion thereof, if he shall elect to do so. And my said executor
shall continue to hold said estate after the decease of said Ben-
jamin Franklin, for the benefit and to the use of his children, if
he shall leave any, until they shall each arrive at the age of
twenty-one years or be married; and I then give and devise the
same to them, their heirs and assigns respectively forever, to be
divided and distributed however as follows: If my said son
shall only leave one male child, then on his arrival at the age of
twenty-one years, or at his marriage, he shall be entitled to have
and take to his own use, if he shall so elect and determine, as
his share and portion of said estate, the mansion-house, barn
and all the other buildings, together with ten acres of land under
and adjoining said buildings; said parcel to be formed by a line
running from the main road to the rear line, and so as to make
said parcel of ten acres as near square as possible. But should
there be more than one male child, then the oldest child shall be
entitled to the same, under the limitations aforesaid, if he shall
so elect; otherwise the second son in the order of age, and so as

to any other sons, in the same order of age, the elder brothers having elected not to take the same. If all said sons elect not to take said estate, then I give and devise the whole of said estate, as heretofore devised for the use of my son Benjamin Franklin, to his children, to be equally divided between them, and to their heirs and assigns forever. If either of said sons as aforesaid shall elect said ten acres and buildings as his share and portion of said estate, then I give and devise the residue of said entire estate to the remaining children, to be divided as aforesaid equally among them, and to their heirs and assigns forever, to be held in trust, however, as aforesaid, until they severally arrive at the age of twenty-one years, or are married. But if my said son Benjamin Franklin shall die leaving no issue living at his decease, then I direct my said executor and trustee to hold the same entire estate during the life of my son John Henry;" [Similar provisions to those before recited were made for the benefit of John Henry, and his children ; and also further provisions, in case neither of the testator's said sons should leave any issue.] And my said executor and trustee, during the continuance of said trust, is charged with the duty of keeping the buildings and farm aforesaid in good order and condition, as to repairs and improvements, if there should be any failure in this respect by the tenants in possession or any one occupying the premises."

Various of the parties interested assented to the granting of the petition ; but, it appearing that minor children of Benjamin F. Porter and John Henry Porter were interested, and that there might be other contingent interests which would be affected by any decree of the court, J. A. Gillis, Esquire, was appointed guardian *ad litem* for the said minor children, and also for any parties not in being who might be affected ; and he made the following answer:

" That he has considered the question of the expediency of the sale of the property referred to, with reference to the rights and interests of those whom he represents ; that the property consists of dwelling-house, outbuildings, and land adjoining ; that the buildings and a portion of the fences are now in good repair, bu

that they can be maintained in their present condition, and the taxes and insurance paid, only at a considerable and disproportionate expense, and that a very much less income would probably be derived from the estate than would be obtained from the proceeds of a sale ; and this respondent has no doubt that it is for the interest of Benjamin F. Porter, the person entitled to a life interest in the estate, that it should be sold.

" That a sale would ultimately be for the interest of the minor children of B. F. Porter and of the other parties represented by this respondent, cannot be stated with certainty, as this would depend upon certain contingencies which cannot be foreseen. For instance, by the terms of the will the eldest son of B. F. Porter, upon his arrival at the age of twenty-one, and after the death of his father, can select as his portion of the testator's estate the dwelling-house and ten acres of land adjoining. If his father should die at or about the time he reached the age of twenty-one, it might be greatly to his advantage that the property should remain unsold, inasmuch as it would probably increase in value; whereas, if his father should die long previous to that time, it would undoubtedly be for the interest of the son that the property should be disposed of, inasmuch as he might then be entitled to the accumulation of interest, which would probably be much greater than the increased value of the estate, if remaining unsold. This respondent is not aware that there is any way of accurately determining, under the peculiar provisions of the will, what on the whole would be for the interest of those whom he represents.

" It is provided by the will, as above suggested, that the eldest son of B. F. Porter, and, on certain contingencies, others of the issue of said testator, may have the right, upon the happening of certain events, of choosing as his portion of testator's estate the said dwelling-house and ten acres of land adjoining the same, as will more fully appear upon reference to said will ; and this respondent further says that this power of choice may be of great benefit and advantage to the person who may have the right to exercise it ; and he is of opinion that the property should not in any event be sold, unless some provision is made

in the order of the court for keeping, as a separate fund, subject to the provisions of said trust, such portion of the proceeds of the sale as the value of said house and ten acres may bear to the value of the whole estate, or in some other mode providing that this right of choice may be substantially exercised by the person who may ultimately be entitled to it."

. The case was thereupon reserved, by *Chapman*, J., for the determination of the full court.

*W. C. Endicott*, for the petitioner.

*J. A. Gillis*, *pro se*, submitted the case without argument.

CHAPMAN, J. The petitioner holds the land under the last will and testament of Benjamin Porter, in trust for the legatees therein named. Benjamin Franklin Porter, a son of the testator, is to have the net income during his life. If he dies leaving sons, the eldest of them will be entitled by the will, on his marriage or coming of age, to elect to take, as his share of the estate, the mansion-house and buildings, with ten acres of land. If he does not elect to take it, the remaining sons are to have in succession the same right. If Benjamin Franklin leaves no issue, the sons of John Henry Porter, another son, are to have the same right.

It is thus apparent that the testator had a strong desire that the mansion-house and the adjoining land should remain in the possession of some one of his male descendants. For that reason he has made this specific legacy. So far as the intent of a testator can reasonably be effected, it should be done. He has exercised a right over his property which the law has given him, and that right should be respected and maintained. It is manifest that a sale of the property would defeat his intent, and destroy the specific legacy.

If it appeared that the mansion-house was going to decay, and that the income of the real estate would be insufficient to keep it in repair, so that the specific legacy would be substantially defeated by keeping the property, a case might be presented which would justify a sale. There might be other circumstances which would show that the interest of all parties required a sale. But, upon the facts now presented, it is not

apparent that the interest of the sons would be promoted by a sale.

By Gen. Sts. *c.* 100, § 16, this court is authorized, in a suit in equity, to decree a sale and conveyance of real estate, when a sale and conveyance " have become necessary or expedient," and an investment or application of the proceeds " upon such security and in such manner as shall best effect the objects of the trust, and be most safe and beneficial for all interested therein." It is obvious that this statute was not intended to confer on the court a discretionary power to act in entire disregard of the objects of the trust.

The *St.* of 1864, *c.* 168, authorizes the court to decree a sale and conveyance upon petition " in the same manner as they may now do upon a suit in equity." But it does not enlarge our discretionary power. We are still to regard the objects of the trust as before. If, therefore, we were to decree a sale of the property under the present circumstances, we should exercise a discretionary power which the legislature did not intend to confer upon us. *Petition dismissed.*